# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| v. | * | Criminal No.: RDB-19-357 |
| **TOY W. ARMSTRONG** | * | |
| | * | |
| **Defendant**. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM ORDER

Defendant Toy W. Armstrong ("Defendant" or "Armstrong") is currently serving a 72-month term of imprisonment for Conspiracy to Distribute and Possess with the Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846. (Judgment, ECF No. 34.) This sentence was agreed upon by Armstrong pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, as set forth in a Plea Agreement. (ECF No. 20.)

On September 9, 2020, Armstrong filed a *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 36.) In his filing, Armstrong argues that he is entitled to compassionate release because his medical conditions have rendered him uniquely susceptible to COVID-19, and he asks that his sentence be reduced. (*Id.*) He also requests that counsel be appointed to assist him with his Motion. (*Id* at 4.) On October 3, 2020, the Office of the Federal Public Defender declined to supplement Armstrong's *pro se* Motion. (ECF No. 38.) On December 3, 2020 and December 30, 2020, Armstrong supplemented his Motion *pro se*. (ECF Nos. 39, 40.) The Government has not filed a response to Armstrong's Motion.

1

Armstrong's submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). Armstrong has not demonstrated health risks sufficient for the Court to consider his request, and analysis under the sentencing factors provided in 18 U.S.C. § 3553(a) does not support a reduction in his sentence. For the reasons stated herein, Armstrong's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 36) is DENIED.

## BACKGROUND

On January 3, 2020, Armstrong was charged as the sole defendant in a single-count Superseding Information with Conspiracy to Distribute and Possess with the Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 (Count One). (ECF No. 17.) On January 17, 2020, Armstrong pled guilty to Count One of the Superseding Information, pursuant to a Plea Agreement under Rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure, with an agreed upon sentence of 72 months of incarceration. (Arraignment, ECF No. 23; Plea Agreement, ECF No. 20.)

Armstrong stipulated that he conspired with numerous individuals to acquire quantities of heroin for distribution in the Baltimore area. (ECF No. 20 at 10.) Armstrong's co-conspirators supplied the heroin to Armstrong, who would then return payments for the heroin to his co-conspirators. (*Id.*) In total, his co-conspirators supplied him with somewhere between three and ten kilograms of heroin. (*Id.*) He also helped one of his co-conspirators obtain an apartment in Owings Mills, Maryland, which was then used to receive and package controlled substances for distribution and collect proceeds from sales. (*Id.*) After being

contacted by his co-conspirators on a disposable cellphone, Armstrong would go to the Owings Mills apartment to repackage the heroin for distribution and carry it out in a backpack. (*Id.*) In September 2018, after executing a search warrant on the apartment, officers recovered approximately $400,00 in U.S. currency, a money counter, and a drug ledger reflecting that Armstrong had acquired approximately 6 kilograms of heroin. (*Id.*) The ledger also reflected that Armstrong returned to the apartment on at least 13 separate occasions with varying amounts of cash ranging from $5,000 to $50,000 to pay for heroin. (*Id.*)

On June 18, 2020, this Court sentenced Armstrong to 72 months' imprisonment, consistent with the Plea Agreement, with credit for time served in custody since August 20, 2019. (Judgment, ECF No. 34.) On September 9, 2020, Armstrong, who is 34 years old, moved for his immediate release in light of the ongoing COVID-19 pandemic, asserting that he suffers from high blood pressure and asthma, which place him at increased risk of severe illness from COVID-19. (ECF No. 36.) On October 3, 2020, the Office of the Federal Public Defender filed correspondence with this Court indicating the Office would not be supplementing the Defendant's *pro se* Motion. (ECF No. 38.) On December 3, 2020, Armstrong supplemented his Motion and further alleged that he suffers from being overweight, possible sleep apnea, and a possible heart condition. (ECF No. 39.) He also claimed that his asthma condition can be categorized as "moderate persistent asthma," given that he takes asthma medication daily. (ECF No. 39 at 2.) On December 30, 2020, Defendant filed a second supplement, alleging that he had tested positive for COVID-19 and exhibited symptoms including 100-degree fever and loss of taste and smell. (ECF No. 40.) Medical records provided by the Defendant confirm that Armstrong has "Essential (Primary)

Hypertension" and asthma for which Armstrong is prescribed daily medication, but nothing in the record confirms Defendant's COVID-19 diagnosis. (ECF No. 39-2 at 13.) The Government did not file a Response.

**ANALYSIS**

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant changes to the procedures involving compassionate release from federal prison. Prior to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole discretion to file compassionate release motions with the Court. With the passage of the First Step Act, defendants are now permitted to petition federal courts directly for compassionate release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The Act permits a defendant to seek a sentence reduction after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory conditions are satisfied, this Court may authorize compassionate release upon a showing of "extraordinary and compelling reasons" warranting a reduction; that the defendant is no longer a danger to the community; and a finding that a reduction in sentence is consistent with the factors presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13.

### I. Appointment of Counsel and Briefing Schedule

On two occasions, Armstrong requested counsel to assist in filing his Motion. (ECF Nos. 36, 39.) This Court notes that there is no general constitutional right to appointed counsel

in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). The court has discretion to appoint counsel in proceedings under 18 U.S.C. § 3582(c) if the interests of justice so require. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000); *see also United States v. Reed*, 482 F. App'x 785, 786 (4th Cir. 2012); *cf.* 18 U.S.C. § 3006A(a)(2)(B) (providing interests of justice standard for appointment of counsel in similar post-conviction proceedings). In this case, the Defendant has not established that the interests of justice require appointment of counsel and this Court shall deny Defendant's request.

## II. Administrative Exhaustion Requirements.

Armstrong has satisfied the administrative exhaustion requirements of 18 U.S.C. § 3582(c)(1)(A). (*See* ECF No. 43-1.) Armstrong sought compassionate release from the Warden of his institution, and on August 11, 2020, this request was denied (*Id.*) As Armstrong has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf, Armstrong's motion is properly before this Court.

## III. Extraordinary and Compelling Reasons.

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Additionally, the Commission has authorized the

Bureau of Prisons to identify other extraordinary and compelling reasons "other than, or in combination with" the reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor the Bureau of Prisons' regulations constrain this Court's analysis. As Judge Blake of this Court has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons' authority over compassionate release petitions and authorizes the district courts to exercise their "independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2 (D. Md. Apr. 30, 2020). Exercising that discretion, this Court has determined that a heightened susceptibility to COVID-19 may present extraordinary and compelling reasons for a sentence reduction. *See, e.g., United States v. Hurtt*, JKB-14-0479, 2020 WL 3639987, at *1 (D. Md. July 6, 2020).

In his Motion, Armstrong argues that he is entitled to compassionate release because the combination of the COVID-19 pandemic and the preexisting medical conditions from which he suffers creates a health risk that constitutes an "extraordinary and compelling" reason which justifies a sentence modification. (ECF Nos. 36, 39.) Armstrong claims that he suffers from asthma, hypertension, and being overweight. (*Id.*) He also claims that, pending confirmation from additional tests, he suffers from sleep apnea and a heart condition such as inferior wall changes. (*Id.*) Because there is no indication that Armstrong has been diagnosed from either sleep apnea or a heart condition, the Court will not consider these conditions in its assessment.

With respect to the Defendant's asthma, this Court notes that although Armstrong alleges that he has "moderate persistent asthma" due to the fact that he takes asthma medication every day, medical records do not indicate that he has either moderate or severe asthma, and, despite reported asthma attacks, medical records conclude that Armstrong is "fine" and that his prescriptions are adequate to manage his asthma. (ECF No. 39-2 at 13, 33). The Centers for Disease Control and Prevention ("CDC") has not indicated that having asthma generally (as opposed to "moderate to severe asthma" specifically) increases one's likelihood of becoming severely ill with COVID-19.[1] *See e.g., United States v. Brown*, No. ELH-01-377, 2020 WL 574194, at *6 (D. Md. Sep. 25, 2020) (holding that asthma that is not "moderate to severe" does not create an extraordinary and compelling reason for release). Based on the medical records provided to this Court, it is unclear whether the Defendant's asthma is of a sufficient severity to create an extraordinary and compelling reason warranting his release.

With respect to the Defendant's allegations related to his weight, measurements taken on September 21, 2020 indicate that Armstrong's Body Mass Index ("BMI") is 27.2 kg/m², which places him in the CDC's category of "overweight" (but not obese) individuals.[2] (ECF No. 39-2 at 62.) However, several district courts have held that obesity is not individually sufficient for a finding that there are circumstances akin to the "extraordinary and compelling

---

[1] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed June 29, 2021).

[2] Overweight (defined as a body mass index (BMI) > 25 kg/m² but < 30 kg/m²), obesity (BMI ≥30 kg/m² but < 40 kg/m²), severe obesity (BMI of ≥40 kg/m²). Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed June 29, 2021).

reasons" which justify compassionate release.³ *See, e.g.*, *United States v. Peaks*, No. 16-20460, 2020 WL 2214231 (E.D. Mich. May 7, 2020) (inmate with BMI of 44 and hypertension does not meet test for extraordinary and compelling circumstances). In this case, Armstrong's weight does not even meet the obesity threshold. Further, compassionate release relief is reserved for those suffering from severe conditions that cannot be remediated. *See United States v. Lisi*, No. 15-cr-457 (KPF), 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020) (holding that defendant's medical condition "must be one of substantial severity and irremediability" in order for court to find extraordinary and compelling reasons for release).

And with respect to Armstrong's allegations related to high blood pressure, this Court notes that the CDC differentiates between medical conditions which *do* increase one's risk of severe illness upon contracting COVID-19 and conditions which *might* increase one's risk of severe illness; hypertension falls into the latter category. *See* CDC, *People with Certain Medical Conditions*, generally, high blood pressure, on its own, "does not constitute an extraordinary and compelling reason which justifies a reduction in sentence." *United States v. Joyner*, No. RDB-17-0483, 2021 WL 781701, at *3 (D. Md. Mar. 1, 2021) (citing *U.S. v. Thomas*, 471 F. Supp. 3d 745, 749 (W.D. Va. 2020)).

Nevertheless, even if Armstrong's preexisting medical conditions in combination were severe enough to present "extraordinary and compelling reasons" for his release, the allegation

---

³ Judges of this Court have found extraordinary and compelling reasons for release during the COVID-19 pandemic where the defendants were obese. *See, e.g.*, *United States v. Collins*, PWG-17-0649, 2020 WL 3960831, at *4 (D. Md. July 13, 2020). However, such decisions are not binding in the case at hand. Further, in *Collins*, Judge Grimm of this Court acknowledged that other courts had found obesity to be only one contributing factor to a finding of extraordinary and compelling circumstances and that obesity alone was insufficient for such a finding. *Id.* at *3 (collecting cases).

that Armstrong has already had COVID-19, taken as fact, demonstrates that his immediate risk of harm has passed. Indeed, according to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[4] This Court notes that other courts across the nation have found that, once an inmate has recovered from COVID-19, presenting medical conditions that put him at increased risk of severe illness from a second infection of COVID-19 is insufficient to demonstrate extraordinary and compelling reasons for relief. *See, e.g.*, *United States v. Zahn*, No. 4:18-CR-00150-JD-1, 2020 WL 3035795, at *2 (N.D. Cal. June 6, 2020) (noting that, for an inmate who had and recovered from COVID-19, "the immediate threat . . . has passed, fortunately with no serious complications of any kind. That is enough to find that he has not proffered an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A)(i)"); *United States v. Risley*, No. No. 1:12-CR-0363 AWI, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17, 2020) ("Courts generally find that the risk of a second infection does not constitute sufficiently compelling grounds to justify compassionate release.").

Finally, while the COVID-19 pandemic created an elevated risk for Defendant Armstrong and others in BOP facilities, the rollout of three vaccines for COVID-19 (Pfizer, Moderna, and Johnson & Johnson), has lowered that risk in recent months. As Judge Hollander of this Court has noted, the BOP has been receiving vaccine shipments since December 16, 2020. *United States v. Graves*, No. ELH-18-17, 20201 WL 1909631, at *8-9 (D. Md. May 11, 2021) (citing Walter Pavlo, *Federal Bureau of Prisons Starts Vaccination of Staff, Inmates*

---

[4] *See* CDC, *REINFECTION WITH COVID-19*, available at https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited June 29, 2021).

*Soon Thereafter*, Forbes (Dec. 21, 2020), https://www.forbes.com/sites/walterpavlo/2020/12/21/federal-bureau-of-prisons-starts-vaccination-of-staff-inmates-soon-thereafter/?sh=5683b99aa96f). Since then, vaccination levels have increased: at FCI Danbury, where the Defendant is imprisoned, the BOP reported as of June 29, 2021, that 180 staff members and 558 inmates (out of 950 total inmates) have been inoculated with the vaccine.[5] Additionally, rates of infection have decreased: there are currently no cases of COVID-19 at FCI Danbury.[6] Therefore, the Court finds that due to Armstrong's previous case of COVID-19 from which he recovered, as well as FCI Danbury's falling COVID-19 infection figures and rising inoculation figures, Armstrong has not presented extraordinary and compelling reasons for relief.

IV. **Application of "Danger to the Community" Factors and 18 U.S.C. § 3553(a).**

Even if Armstrong had presented extraordinary and compelling reasons for a sentence modification, consideration of the sentencing factors under 18 U.S.C. § 3553(a) reveals that he is nevertheless not a suitable candidate for early release. This Court must find extraordinary and compelling circumstances, *as well as* that the defendant would not pose "a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), and that a reduction in sentence is consistent with the sentencing factors provided in 18 U.S.C. § 3553(a) in order to grant such Motion.

---

[5] Staff who received their vaccination in the community rather than a BOP facility are not reflected in these figures. https://www.bop.gov/coronavirus/ (last accessed June 29, 2021).
[6] Since the beginning of the COVID-19 pandemic, 155 inmates and 83 staff have recovered from COVID-19 at FCI Danbury. One inmate has died from COVID-19. https://www.bop.gov/coronavirus/ (last accessed June 29, 2021).

To determine whether a defendant poses a danger to the community, this Court must consider a number of factors, including (1) the nature and circumstances of the offense; (2) the weight of the evidence against him; (3) his history and characteristics; and (4) the nature and seriousness of the danger he would pose to others upon his release. *See* 18 U.S.C. § 3142(g). Analysis under 18 U.S.C. § 3553(a) involves consideration of some of the same factors. Under § 3553(a), the court considers (1) Armstrong's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See United States v. Bryant*, Crim No. 95-202-CCB-3, 2020 WL 2085471, at *4 (D. Md. Apr. 30, 2020).

Looking at each of these factors, this Court finds that a reduction in Armstrong's sentence is inappropriate. Armstrong was previously convicted twice as an adult and has violated his probation, demonstrating that he has not been deterred by periods of incarceration. (Presentence Investigation Report, ECF No. 33 at 6-8.) Additionally, the nature of Armstrong's current criminal case, serving as a key member of a conspiracy to possess and distribute heroin, is serious. Overall, the nature of the crime warranted the sentence initially imposed. A reduction at this time, when Armstrong has only served 30% of his sentence, would be inconsistent with the deterrent effect of the sentence.

**CONCLUSION**

Accordingly, for the reasons stated above, it is HEREBY ORDERED this 6th day of July, 2021, that Defendant Armstrong's Motion for Compassionate Release (ECF No. 36) is DENIED.

_____/s/_____
Richard D. Bennett
United States District Judge